E.W. RAASCH, Jr.,
Plaintiff-Respondent,

v.

TRI–COUNTY TRUST COMPANY, A Missouri Banking Corporation, Defendant-Appellant.

No. WD 37402.

Missouri Court of Appeals, Western District.

April 29, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1986.

James J. Wheeler, Keytesville, for defendant-appellant.

P. Wayne Kuhlman, John B. Reddoch, Kuhlman, Reddoch & Kenagy, Liberty, for plaintiff-respondent.

Before LOWENSTEIN, P.J., and TURNAGE and BERREY, JJ.

TURNAGE, Judge.

E.W. Raasch, Jr. brought suit against Tri-County Trust Company for conversion of hogs. The court entered judgment on the jury verdict in favor of Raasch for $15,000 actual damages on Count I, $10,000 in actual damages on Count II, and $12,000 in punitive damages. Tri-County contends the judgments are not supported by the evidence. Affirmed in part and reversed in part.

On September 19, 1977 Raasch sold to Rudy Heyen 66 registered Spotted and registered Yorkshire sows and five registered boars. To finance the sale Heyen gave Raasch a combination promissory note and security agreement dated January 16, 1978. A financing statement was filed March 14, 1978 in the Howard County recorder of deeds office, the county of Heyen's residence. The statement listed the hogs as collateral and described them by the number of hogs covered and by breed.

Tri-County had made a previous loan to Heyen and in the fall of 1979, in connection with the renewal of that loan, sought additional security. To comply Heyen pledged as collateral farm equipment and livestock, including 150 sows. The security agreement noted that Heyen owed Raasch on 75 of the sows. The theory of Tri-County was that its security interest was in the remaining 75 sows.

On March 17, 1980, Raasch sold to Heyen 33 registered gilts and 3 registered boars. Heyen gave Raasch a combination promissory note and security agreement covering these hogs. The financing statement was filed on May 7, 1980.

Pursuant to a court order entered in a replevin suit filed by Tri-County against Heyen, the Sheriff of Howard County seized 75 hogs from Heyen on April 30 and May 1, 1980. When it developed that five of the hogs seized were boars, Tri-County offered to have them returned to Heyen, but he refused. The boars were thereafter sold and Heyen was given the proceeds.

Raasch introduced evidence that there is a system for marking hogs by which the individual animal may be identified. The system involves a series of notches made in the ears and from this the hogs can be identified by the litter from which they came and the number in that particular litter. Raasch introduced evidence that by using the ear marks which he had placed on the hogs prior to selling them to Heyen he was able to identify among those seized

about 66 hogs which he had sold Heyen in 1977 and 1980. It was Raasch's theory that he had a security interest in all of the hogs owned by Heyen and that Tri-County had no legal right to seize such hogs.

Tri-County introduced evidence that there was no generally recognized marking system for hogs and that Tri-County had no knowledge of any particular marking system. Tri-County's evidence was that the sheriff seized the hogs pursuant to the court order and the sheriff testified that he had no way of telling one hog from another when he seized the 75.

It is undisputed that no financing statement or security agreement described the hogs in any manner except by the number of hogs covered and by their breed.

■ Count I of Raasch's petition alleged that Tri-County seized hogs Raasch had sold to Heyen in September of 1977 and which were covered by Raasch's 1978 security agreement. Tri-County contends Raasch did not have a perfected security interest in those hogs because the financing statement did not list Raasch's address as required by § 400.9–402[1] and did not contain an adequate description of the collateral as required by § 400.9–110. Tri-County admitted that when it took its security interest it had actual knowledge of the 1978 security agreement which gave to Raasch a security interest in 66 sows and 5 boars sold to Heyen in 1977. Tri-County also admitted its security interest was in the remaining 75 sows. Tri-County became a lien creditor when the court entered judgment in its favor in the replevin suit, § 400.9–301(3), and at that time Tri-County had actual knowledge of Raasch's security interest. Tri-County thus became a lien creditor with knowledge of Raasch's security interest and as such, Tri-County did not obtain any priority over Raasch and in fact,

the Raasch security interest was superior. Section 400.9–301(1)(b); *Bank of Drexel v. Kyser, Inc.,* 685 S.W.2d 230, 233[3] (Mo. App.1984). This obviates any defect in the document failing to give the address of Raasch.

Tri-County states that § 400.9–110 requires the description of personal property in the financing statement to reasonably identify what is described. Tri-County contends the description of the hogs in the Raasch financing statement was insufficient so that it prevented Raasch from perfecting his security interest and prevented Tri-County from having notice of Raasch's security interest. Tri-County acknowledged in its security agreement with Heyen that Heyen owed Raasch for 75 of the 150 sows. Tri-County thus had actual knowledge of Raasch's security interest and cannot now claim it had no notice. As held above, when Tri-County became a lien creditor, it had actual knowledge of Raasch's security interest and under § 400.9–301(1)(b) did not obtain any priority over Raasch. *Bank of Drexel v. Kyser, Inc.,* 685 S.W.2d 230, 233[3] (Mo.App.1984). This obviates any failure as to the description in the financing statement, as Raasch has priority regardless of whether he properly filed.[2] The adequacy of the description in the financing statement is thus immaterial in the determination of Raasch's priority. However that description is identical to the description of collateral in the security agreement. The question thus remains whether the description meets the requirements of § 400.9–110 so that the security agreement complies with § 400.9–203(1)(b) and Raasch has a valid security interest.

■ In *United States v. Mid-States Sales Co.,* 336 F.Supp. 1099, 1102[2] (D.Neb.1971), the court held that the Uniform Commercial Code in § 9–110 provides

1. All sectional references are to Missouri's Revised Statutes, 1978, unless otherwise stated.

2. Tri-County contends it has priority over Raasch as it filed and thus holds a perfected security interest. The error in this assertion is that Tri-County acknowledged Raasch's security interest in 75 sows and admitted its own security interest was in the remaining 75 sows. These facts were expressed in the security agreement which described the collateral as 150 sows, owe Raasch for 75. Tri-County cannot assert priority over sows which it admitted it did not claim to have a security interest in.

a description of personal property is sufficient if it reasonably identifies what is described. The court held that the description of cows by merely stating the number and breed was not so inexact as to render the security instrument defective, but that it was sufficiently uncertain, where other cattle of the same breed were owned by the debtor, to cast a substantial burden upon the party claiming a right in such cattle to be able to clearly identify the cattle in order to obtain a priority. Under the facts of this case, the description of hogs by number and by breed is likewise uncertain as Heyen owned other hogs of the same breed. However, Raasch carried the substantial burden to sufficiently identify the hogs when he examined the hogs the sheriff had seized and identified by ear marks about 66 hogs which he claimed were covered by the two security agreements.

As to Count I the evidence was sufficient to support a judgment for conversion by Tri-County of hogs Raasch had a security interest in and which Raasch was entitled to possess because Heyen was in default on his obligation to Raasch. No question is raised as to the amount of damages assessed for the hogs covered by the 1978 security interest.

Tri-County claims that it had a superior security interest in the hogs purchased by Heyen in 1980 and for that reason Raasch did not have a valid claim for the conversion of hogs purchased in 1980. It is true Raasch did not perfect his security interest in the 1980 hogs at the time Heyen received possession of the hogs or within 10 days thereafter as required by § 400.9-312(4). Raasch did not file a financing statement until May 7, 1980, after Tri-County seized the hogs. However, the fact remains that Tri-County never made any claim to the 1980 hogs. As mentioned, Tri-County's right to seize the hogs was based on its suit in replevin. The replevin suit claimed a right of possession under the 1979 security agreement given by Heyen to Tri-County and the order in replevin directed the sheriff to pick up the property described in the 1979 security agreement. Thus, Tri-County never made a claim to

have a security interest in the hogs purchased in 1980 and the evidence does not show that it ever acquired such an interest. Tri-County therefore did not show a right to possession of the hogs sold to Heyen in 1980 and indeed it never acquired any right to possession.

As to the 1980 hogs, Raasch held an unperfected security interest which was superior to Tri-County's claim because Tri-County never acquired any interest in the 1980 hogs. In that situation Raasch was entitled to recover on Count II.

■ Tri-County finally contends the judgment for punitive damages cannot stand because there was no evidence that it knew it was acting wrongfully when it filed a replevin suit and obtained a court order, and pursuant thereto caused the sheriff to seize 75 hogs from Heyen. It is clear that Raasch had the burden to prove that Tri-County did a wrongful act without just cause or excuse. The evidence revealed that the hogs covered by the Raasch security agreement of 1978 were not described by anything more than the number of hogs and their breed. Although Raasch had evidence that the hogs sold by him to Heyen had notches on their ears by which they could be identified, the hogs were not identified in Raasch's 1978 or 1980 security agreements by a number corresponding to the ear notches. Thus, even if there is a marking system, Raasch failed to identify the hogs in his security agreements by use of that system. This prevented Tri-County from knowing that any hog seized by the sheriff was covered by Raasch's 1978 security agreement. Further, there is no indication in the evidence that Tri-County was aware of the sale of hogs to Heyen in 1980 or of Raasch's security agreement covering those hogs. Thus, Tri-County did not intentionally seize hogs in which it knew that Raasch had a superior right.

The sheriff testified that when he went to the Heyen farm he found the hogs dispersed over the entire farm, which covered over a hundred acres. He stated there was no way to identify any particular hog. The

sheriff was instructed to pick up 75 hogs by the replevin order obtained by Tri-County and he did that. He conceded that he picked up 5 boars by mistake when the order only included sows. As soon as the mistake was noticed Heyen was notified, but he refused to accept the return of the boars. The boars were sold and Heyen was sent the proceeds.

The evidence failed to reveal any knowledge on the part of Tri-County that it wrongfully seized hogs in which Raasch had a security interest. On the contrary, the evidence clearly reveals that Tri-County acted in good faith by obtaining a court order to seize the 75 sows. Raasch had actual knowledge of that proceeding and the evidence was that he attended the hearing and testified. In his testimony he failed to make any claim to the hogs.

██ In order to support punitive damages it must be shown that the party to be charged knew that the act was wrongful and was done intentionally without just cause or excuse. *Walker v. Huddleston*, 261 S.W.2d 502, 507[6, 7] (Mo.App.1953). The evidence in this case fails to show that Tri-County committed any act knowing it was wrong. The judgment for punitive damages is therefore unsupported.

The judgment on Count I in favor of Raasch in the amount of $15,000 is affirmed. The judgment on Count II in favor of Raasch in the amount of $10,000 is affirmed and the judgment for punitive damages for Raasch in the amount of $12,000 is reversed. Costs on this appeal are divided with two-thirds being assessed against Tri-County and one-third against Raasch.

All concur.