

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-09-00185-CR

_____


ROBERT EARL DANGERFIELD, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 22821



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Robert Earl Dangerfield was convicted of DWI, third offense,[1] and was sentenced to ten years' imprisonment. Dangerfield appeals his conviction, claiming (1) his right to counsel was violated; (2) he received ineffective assistance of counsel during trial; and (3) the evidence was legally and factually insufficient to support a conviction for DWI. We affirm the judgment of the trial court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Officer Billy Pillars[2] was on patrol duty on the evening of July 24, 2008, when he saw a puff of smoke coming from underneath the Loop on North Main Street in Paris, Texas. Pillars proceeded toward the Loop and found a blue car high centered on the guardrail underneath the Loop on the east side. The only person in the blue car was a black male, who identified himself as Dangerfield. Dangerfield was sitting on the driver's side of the car, with the engine still running. Both doors were jammed shut, but Dangerfield was able to kick the passenger's side door open and get out of the car. Dangerfield told Pillars he did not know what happened, and stated that he was not injured.

When Dangerfield stepped out of the car, his balance was very unsteady, he only had one shoe on, and he began urinating on the side of the road. When Pillars told Dangerfield to stop, Dangerfield zipped his pants back up, but did not stop urinating. Dangerfield's eyes were red,

---

[1]TEX. PENAL CODE ANN. § 49.09 (Vernon Supp. 2009).

[2]Pillars is a certified peace officer for the State of Texas employed by the City of Paris Police Department.

2

and his breath carried a strong odor of alcohol.[3]  Pillars found an open can of cold Busch beer in Dangerfield's car.  When asked to perform standard field sobriety tests, Dangerfield refused.  When Dangerfield refused to attempt to step over the guardrail, Pillars asked him to walk around it.  At that time Pillars testified that Daingerfield stated, "I'm drunk, just show me, I'm drunk."  Dangerfield was then transported to the Lamar County jail, where Corporal Doug Murphy[4] was called upon to administer an Intoxilyzer test.

Before attempting to administer the test and prior to advising Dangerfield of his statutory rights,[5] Murphy advised Dangerfield of his *Miranda*[6] rights.  Immediately, Dangerfield requested an attorney.  Dangerfield was then advised of his statutory rights under the Texas Transportation Code, during which time he reiterated his request for counsel.  Murphy advised Dangerfield that he did not have a right to counsel during the taking of a specimen.  After having been advised of his statutory rights, Dangerfield indicated he did not wish to speak with Murphy.[7]

---

[3]While Pillars' patrol vehicle is equipped with an in-car camera, the video portion of the camera was not working at the time of Dangerfield's arrest, and the events described here were not recorded on video.  Because the audio portion of the in-car camera was functional, an audio recording of these events exists, although the quality of the recording is poor.

[4]Murphy is a certified peace officer for the State of Texas and is employed as a patrol officer for the City of Paris Police Department.  Murphy is also certified by the State as an Intoxilyzer operator.

[5]Section 724.015 of the Texas Transportation Code sets forth the information which must be provided to a person before the taking of a specimen, advising, among other things, of the penalties for refusing to provide a specimen. TEX. TRANSP. CODE ANN. § 724.015 (Vernon Supp. 2009).

[6]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[7]Dangerfield made such comments as, "[F]orget all that," "[W]e don't have nothing else to talk about," and [there is] nothing else to talk about."

Dangerfield voluntarily stated, however, that he was not drunk and that he was not high. Murphy then asked Dangerfield if he wanted to "answer any more of my questions?" Dangerfield responded, "Since it's you, I will [answer your questions]."

Thereafter, Dangerfield proceeded to tell Murphy that he had been "drinking earlier," that he had been "drinking since one o'clock," and that he had consumed Busch beer and Canadian Hunter whiskey. Dangerfield, a diabetic, also told Murphy that he had not taken any medicine for his diabetes in approximately two weeks because he had been drinking. Dangerfield refused to submit to an Intoxilyzer test.

## II.     ANALYSIS

### A.  Dangerfield's Right to Counsel Was Not Violated.

Dangerfield's claim that he was denied right to counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution is based on the admission of evidence at trial allegedly obtained in violation of his *Miranda* rights,[8] and even though his trial counsel did not object to the admission of evidence obtained after he invoked his right to counsel, the admission of such evidence is fundamental error. We disagree.

#### 1.  Sixth Amendment Right to Counsel

The right to counsel under the Sixth Amendment to the United States Constitution protects

---

[8]Dangerfield contends that his right to counsel under Article One, Section 10 of the Texas Constitution was violated. He fails to brief this point of error, or to explain how the United States and Texas Constitutions differ with respect to the invocation of the right to counsel. Therefore, we do not address this point of error. *See* TEX. R. APP. P. 38.1(h), (i).

an accused's right to counsel "only at or after the time that adversary judicial proceedings have been initiated, whether by way of a formal charge, preliminary hearing, indictment, information or arraignment." *Griffith v. State*, 55 S.W.3d 598, 603 (Tex. Crim. App. 2001). A person has not become an "accused" within the meaning of the Sixth Amendment merely because he or she has been detained by the government with the intention of filing charges against them. *Id*.; *United States v. Gouveia*, 467 U.S. 180, 187–90 (1984). In the present case, "adversary judicial proceedings" had yet to commence because the State did not file charges against Dangerfield until sometime after questioning by Murphy. Therefore, Dangerfield's Sixth Amendment right to counsel had not yet attached. Accordingly, no violation of Dangerfield's Sixth Amendment right to counsel occurred. This point of error is overruled.

## 2. Fifth Amendment Right to Counsel

The Fifth Amendment limitations on interrogation have been announced in court decisions beginning with *Miranda v. Arizona*, 384 U.S. 436 (1966) in which the Court held,

> The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today.

*Id.* at 469. *Miranda*'s procedural safeguards were designed to operate in the context of custodial interrogation. *Griffith*, 55 S.W.3d at 603. Questions normally accompanying the processing of a DWI arrestee do not constitute custodial interrogation. *Id*.; *McCambridge v. State*, 712 S.W.2d

5

499, 504 (Tex. Crim. App. 1986). Further, a "suspect's decision to take or refuse a breath test and the question prompting that decision do not constitute custodial interrogation, nor do they involve the constitutional privilege against self-incrimination." *Hernandez v. State*, 13 S.W.3d 78, 82 (Tex. App.—Texarkana 2000, no pet.).

Dangerfield contends, however, that because he was asked a number of pointed questions regarding the facts of the amount of alcohol he drank, when he quit drinking, when he last ate, as well as information about medications he was taking, all of which took place after he invoked his right to counsel, nothing he said thereafter could be introduced as evidence at trial. Assuming the State elicited such information in derogation of Dangerfield's *Miranda* rights, we will address Dangerfield's contention that the introduction of such evidence amounts to fundamental error.

Dangerfield acknowledges his failure to object to alleged inadmissible evidence, but claims that the admission of the disputed evidence constitutes fundamental error and is therefore reviewable. To preserve error concerning the erroneous admission of evidence, a defendant must timely lodge a specific objection. TEX. R. EVID. 103(a)(1); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); *Cacy v. State*, 901 S.W.2d 691, 699 (Tex. App.—El Paso 1995, pet. ref'd). However, an exception to general waiver principles exists for fundamental error. *See* TEX. R. EVID. 103(a)(1). Fundamental errors are violations of rights which must be affirmatively waived, or denials of absolute systemic requirements. *Mendez v. State*, 138 S.W.3d 334, 341

6

(Tex. Crim. App. 2004).[9]

Numerous constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purposes of appellate review unless properly preserved. *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009). A defendant's right to have the State refrain from introducing certain evidence is neither an absolute systemic requirement, nor a right that must be affirmatively waived. *Saldano*, 70 S.W.3d at 889. In order to complain about the admissibility of a confession, even in regard to a violation of *Miranda*, and other federally guaranteed constitutional rights, there must be an objection in the trial court. *Ex parte Bagley*, 509 S.W.2d 332, 333 (Tex. Crim. App. 1974). The requirement of a trial court objection applies with equal force to alleged *Miranda* violations. *Allridge v. State*, 762 S.W.2d 146, 157 (Tex. Crim. App. 1988). The defendant's right to remain silent and not have that silence used against him or her at trial is a right which may be forfeited, and must be preserved via appropriate

---

[9]The Texas Court of Criminal Appeals has provided a nonexclusive list of fundamental errors: (1) denial of the right to counsel; (2) denial of the right to a jury trial; (3) denial of ten days' preparation before trial for appointed counsel; (4) absence of jurisdiction over the defendant; (5) absence of subject matter jurisdiction; (6) prosecution under a penal statute that does not comply with the separation of powers section of the state constitution; (7) jury charge errors resulting in egregious harm; (8) holding trials at locations other than the county seat; (9) prosecution under an ex post facto law; and (10) comments by a trial judge that taint the presumption of innocence. *Saldano v. State*, 70 S.W.3d 873, 886 (Tex. Crim. App. 2002); 4 Frank Maloney, et al., *Texas Criminal Practice Guide* § 90.03 (2010). The Texas Court of Criminal Appeals has differentiated between "structural" errors which affect the framework of the trial (for which no harm analysis is necessary) and "systemic" errors which involve absolute requirements or prohibitions. The court has a duty to protect this systemic right or apply the law absolutely, and a party may complain for the first time on appeal, but the systemic requirement is subject to a review to determine harm. *Mendez*, 138 S.W. 3d at 340–41. In *Marin v. State*, 851 S.W. 2d 275 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997), the court explained that the systemic requirement is absolute, whereas other rights may be expressly waived and still others may be forfeited unless asserted. *Id.* at 279. The term "fundamental error" has been used to describe complaints that may be first raised on appeal, but now that concept is considered in the *Marin* framework. *Mendez*, 138 S.W.3d at 341.

objection at trial.   *See Wheatfall v. State*, 882 S.W.2d 829, 836 (Tex. Crim. App. 1994) (complaint concerning admission of evidence of defendant's post-arrest silence waived in absence of objection.).   Moreover, to permit a jury to hear a defendant invoke his or her right to counsel is not fundamental error.   *Reyes v. State*, 267 S.W.2d 268, 273 (Tex. App.—Corpus Christi 2008, pet. denied).

Here, the failure to object to the admission of the officer's testimony and the recording did not deny Dangerfield of the right to counsel, but merely forfeited his remedy of excluding evidence obtained after he had invoked his right to counsel during the interrogation.   We find this complaint involves a right that was forfeitable.   Because Dangerfield did not object to the admission of the evidence of which he now complains—Murphy's testimony regarding what is on the video recording, and the presentation to the jury of the actual video recording—the question he seeks to present has not been preserved for our review.   We overrule this point of error.

### B.   Dangerfield Did Not Receive Ineffective Assistance of Counsel

In his second point of error, Dangerfield asserts four instances whereby he was allegedly denied effective assistance of counsel for failing to object to the following:   (1)   inadmissible portions of the video recording of Dangerfield, showing incriminating responses to custodial interrogation; (2) Murphy's testimony concerning Dangerfield's statements to Murphy after Dangerfield invoked his right to counsel; (3) the audio portion of the video recording showing Dangerfield's repeated requests for counsel; and (4) Pillars' testimony regarding the cause of the

8

accident.

Ineffective assistance of counsel claims are evaluated under a two-part test formulated by the United States Supreme Court, requiring a showing of both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). First, Dangerfield must show that his counsel's representation fell below an objective standard of reasonableness. *Fox v. State*, 175 S.W.3d 475, 485 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong*, 25 S.W.3d at 712. Therefore, we will not second guess the strategy of Dangerfield's counsel through hindsight. *See Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd).

The second *Strickland* prong requires a showing that the deficient performance prejudiced the defense to the degree that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 689; *Tong*, 25 S.W.3d at 712. Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006).

Allegations of ineffectiveness must be firmly founded in the record. *Goodspeed v. State*,

9

187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003). Absent an opportunity for the attorney to explain the questioned conduct, we will not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed*, 187 S.W.3d at 392; *Fox*, 175 S.W.3d at 486. For this reason, direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. *Thompson*, 9 S.W.3d at 813–14; *Fox*, 175 S.W.3d at 485.

Dangerfield's first two complaints of ineffective assistance are related in that they complain about the admission of allegedly objectionable evidence—the first in the form of a video recording and the second in the form of Murphy's trial testimony.

The Fifth Amendment bars police-initiated interrogation of an accused who, in the context of custodial interrogation, has asserted his or her right to counsel during that interrogation—unless the accused's counsel is actually present. *Hughen v. State*, 297 S.W.3d 330, 335 (Tex. Crim. App. 2009). Dangerfield does not contend that the conduct of field sobriety tests or questions normally attendant to record-keeping procedures in an arrest situation are testimonial in nature; rather, he contends that questions regarding when he had last eaten, what he had to drink, and when he last drank went beyond the scope of that normally attending arrest and amounted to custodial interrogation because the questions asked were likely to elicit an incriminating response. *Jones v.*

10

*State*, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990). Dangerfield thus contends that his attorney was deficient in failing to object to those portions of the video recording which depict testimonial statements by Dangerfield, as well as to Murphy's testimony regarding those same testimonial statements. *See Martinez v. State*, 275 S.W.3d 29 (Tex. App.—San Antonio 2008, no pet.) (statements made in response to further police-initiated questioning without the presence of an attorney are inadmissible).

The video recording, played in its entirety to the jury without objection, illustrates Dangerfield providing Murphy with incriminating responses to Murphy's questions.[10] Murphy's

---

[10]A snapshot of the conversation between Murphy and Dangerfield is reflected in Murphy's trial testimony:

> [COUNSEL]: What question did you just ask him?
>
> MURPHY: I asked him if he'd been drinking.
>
> [COUNSEL]: What was his response to you?
>
> MURPHY: He said I knew he'd been drinking earlier.
>
> . . . .
>
> [COUNSEL]: Okay. He admitted to you that he had been drinking a little all that day, didn't he?
>
> MURPHY: He stated he'd been drinking pretty much all day, at another point said he'd been drinking since one o'clock. He said he had been consuming and drinking all night. Later on, said he had stopped drinking around 6:00.
>
> [COUNSEL]: What did he tell you he had been drinking?
>
> . . . .
>
> MURPHY: Said he'd been drinking beer and whiskey. When I asked him specifically which kind, he stated Bush [sic] and Canadian Hunter.

11

testimony repeats these same responses. We must determine whether counsel's conduct in not objecting to this evidence falls below an objective standard of reasonableness.[11] For purposes of our analysis, we will assume the evidence in question was inadmissible. We observe that mere identification of instances in which counsel did not make an evidentiary objection, without more, does not establish deficient performance of counsel for the purposes of an ineffective assistance claim. *See, e.g.*, *Thomas v. State*, 886 S.W.2d 388, 392 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) ("Failure to object to inadmissible testimony can constitute a sound and plausible trial strategy.").

Counsel's reasons for not objecting do not appear in the record on direct appeal. Where an appellate record is silent as to why trial counsel failed to take certain actions, the appellant has failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable.[12] *See Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see also*

---

[COUNSEL]: When you asked him when the last time he had any insulin injections or whatever, do you recall what he said to you?

MURPHY: He said it had been two weeks. He said he had not been taking it because he ha[d] been drinking.

[11]The State contends Dangerfield waived his right to counsel by initiating communications with Murphy. In light of our decision, we do not find it necessary to address this issue.

[12]Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Mallett v. State*, 65 S.W.3d 59, 69 (Tex. Crim. App. 2001); *Fuller v. State*, 224 S.W.3d 823, 828–29 (Tex. App.—Texarkana 2007, no pet.). In addressing this reality, the Texas Court of Criminal Appeals has explained that appellate courts can rarely decide the issue of ineffective assistance of counsel because the record almost never speaks to the strategic reasons that trial counsel may have considered. The proper

*Thompson*, 9 S.W.3d at 814 (if record is silent as to attorney's particular course of action, defendant did not rebut presumption). The Texas Court of Criminal Appeals has set the bar very high for finding counsel ineffective, without a hearing explicitly demonstrating inaffectiveness. *Goodspeed*, 187 S.W.3d at 394 (failure to conduct voir dire examination when defendant was eligible for community supervision found not to be ineffective; using two peremptory challenges on jurors already excused by court found not harmful). The ineffectiveness of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See Smith v. State*, 51 S.W.3d 806, 813 (Tex. App.—Texarkana 2001, no pet.). This failure to object to Dangerfield's statements should be viewed in the context of the trial. At that time, evidence had been presented that during the initial investigation at the scene of the arrest, Dangerfield volunteered to Murphy that he was drunk. Further, there was abundant physical evidence of his intoxicated state. We cannot say that counsel's conduct in failing to object to the complained-of evidence was so outrageous that no competent attorney would have engaged in it. *Goodspeed*, 187 S.W.3d at 392; we therefore conclude that Dangerfield failed to meet his burden to show trial counsel's performance fell below an objective standard of reasonableness by not objecting to this evidence.

Dangerfield next asserts that his attorney was ineffective because he failed to object to the audio portion of the video recording showing Dangerfield's repeated requests for counsel.

procedure for raising this claim is therefore almost always habeas corpus. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); *Aldrich v. State*, 104 S.W.3d 890, 896 (Tex. Crim. App. 2003).

Evidence showing a defendant invoking his right to counsel is inadmissible at trial. *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991); *Loy v. State*, 982 S.W.2d 616, 617 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd).

As in this case, the jury in the *Loy* case was permitted to see and hear a video recording showing the defendant invoking his right to counsel several times. Because the defendant "clearly invoked his right to counsel," evidence showing that invocation was inadmissible. *Loy*, 982 S.W.2d at 617. In this case, Dangerfield's counsel failed to object to the invocation of his client's repeated requests for counsel, as depicted on the video recording played to the jury. That failure does not dictate the conclusion, as Dangerfield asserts, that his counsel was thereby ineffective.

Again, the record is devoid of evidence revealing counsel's reasons for not objecting to this portion of the video recording. It is conceivable that counsel concluded it was best to allow the jury to hear such request for counsel in an attempt to persuade the jury that Dangerfield was denied his constitutional right in that respect and, therefore, perhaps in other ways. In the absence of evidence for counsel's reasoning, and in the lack of anything that would indicate such completely ineffective assistance as could be shown without such a record, we are compelled to conclude on this point as well that Dangerfield failed to meet his burden to show trial counsel's performance fell below an objective standard of reasonableness by not objecting to those portions of the video recording depicting Dangerfield's invocation of his right to counsel.

Dangerfield's final contention with respect to his ineffective assistance claim centers on the fact that his trial counsel did not object to Pillars' testimony regarding the cause of Dangerfield's automobile accident, resulting in his car being high centered on a guardrail. In this regard, Pillars testified that Dangerfield crossed "all the lanes, into oncoming traffic and hit[s] the guardrail." Pillars testified that he did not observe any other vehicles "in that intersection" when this happened.[13]

Dangerfield claims that Pillars was not qualified to testify regarding the cause of the accident, since his education and training were limited to basic police academy training. We initially observe that Pillars' testimony regarding the accident was primarily factual, and thus not properly classified as expert testimony.[14] Counsel's failure to object to admissible testimony

---

[13]The remainder of Pillars' testimony on this issue is fairly summarized as follows: Dangerfield struck the guardrail when he went under the Loop; Dangerfield stated that he was going fifty-five miles per hour; the speed limit was forty miles per hour; there were no brake or yaw marks in the area of the accident; Pillars did not locate any obstruction in the roadway that would have caused Dangerfield to swerve; Dangerfield said nothing at the accident scene about a blue van swerving in front of him; the issue of the blue van came up only after Dangerfield was arrested and taken into custody; if a vehicle pulled out of the Exxon station going north, it would not be in Dangerfield's traffic lane; if a van pulled out of the Exxon station going south, it would be going in the same direction as Dangerfield; if a vehicle pulled out in front of Dangerfield, it would cause his car to veer away from the point where the accident occurred; often, when a car pulls out in front of another car, the driver of the second car will hit their brakes; Pillars was never provided with information that another vehicle was involved in this accident; Pillars saw no evidence of another vehicle; Dangerfield was going to take the turn and go up the on-ramp to the Loop; he did not know where he was and turned early; Dangerfield was close to the off-ramp for westbound traffic; and if he had gone that way, he would have been going the wrong way.

[14]Rule 702 of the Texas Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

TEX. R. EVID. 702.

15

does not constitute ineffective assistance.  *See Rodriguez v. State*, 975 S.W.2d 667, 674 (Tex. App.—Texarkana 1998, pet. ref'd).

Assuming a part of Pillars' testimony was inadmissible based on his lack of expert qualification, we cannot conclude trial counsel was thereby ineffective.   As stated earlier, the fact that counsel did not make an evidentiary objection, without more, does not establish deficient performance for the purpose of an ineffective assistance claim.  *Thomas*, 886 S.W.2d at 392. Moreover, as with Dangerfield's first three claims of ineffective assistance, counsel's reasons for not objecting do not appear in the record on direct appeal.  We must therefore conclude that Dangerfield failed to meet his burden to show trial counsel's performance fell below an objective standard of reasonableness by not objecting to those portions of Pillars' testimony now claimed to be objectionable.

We overrule Dangerfield's claims of ineffective assistance of counsel.

### C.   The Evidence Is Legally and Factually Sufficient to Support Conviction

In his final point of error, Dangerfield claims the evidence is legally and factually insufficient to support conviction.   The State responds that the essential elements of the offense were proven beyond a reasonable doubt.   Dangerfield does not challenge the jurisdictional element as to the two prior DWI convictions.[15]   The record demonstrates that he stipulated to the

---

[15]There are three grades of the offense of DWI.  The difference between the grades is set by the number of prior convictions for certain intoxication-related offenses. The prior intoxication-related offenses are elements of the offense of DWI.  *Gibson v. State*, 995 S.W.2d 693, 696 (Tex. Crim. App. 1999). They define the offense as a felony and are admitted into evidence as part of the State's proof of its case-in-chief during the guilt/innocence stage of the

16

two prior DWI convictions.

We review the legal and factual sufficiency of the evidence supporting a conviction under well-established standards. In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). In conducting a factual sufficiency review, we consider the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006).

We may find evidence factually insufficient in two ways: (1) the evidence supporting the conviction is "too weak" to support the fact-finder's verdict, or (2) considering conflicting evidence, the fact-finder's verdict is against the great weight and preponderance of the evidence.

trial. *Id.*

17

*Laster*, 275 S.W.3d at 518. In so doing, we may find the evidence insufficient when necessary to prevent manifest injustice. *Id.* Although we give less deference to the verdict in a factual sufficiency review, we will not override the verdict simply because we disagree with it. *Id.* Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).

A person commits the offense of driving while intoxicated if he or she operates a motor vehicle in a public place without the normal use of mental or physical faculties due to the introduction of alcohol or other substances into the body. TEX. PENAL CODE ANN. §§ 49.01(2)(A), 49.04(a) (Vernon 2003). Under a hypothetically correct charge in this case, the jury was required to find, beyond a reasonable doubt, that (1) Dangerfield, (2) operated a motor vehicle, (3) in a public place, (4) without the normal use of mental or physical faculties, (5) due to the introduction of alcohol or other substances into the body, while (6) previously having been convicted two times of an offense "related to operating a motor vehicle, aircraft or watercraft" while intoxicated. TEX. PENAL CODE ANN. §§ 49.01(2)(A), 49.04(a) and 49.09(b).

Dangerfield contends there is no evidence that he actually operated a motor vehicle in a public place while intoxicated. In other words, the mere fact that he may have been behind the steering wheel of the automobile when Pillars arrived at the accident scene does not establish that he was intoxicated while driving. In support of this position, Dangerfield points to the fact that

18

Pillars did not see the accident, nor did he see Dangerfield operating his vehicle. In the present case, however, Dangerfield admitted to Pillars that he was the driver of the vehicle involved in the accident. In addition, as in this case, "appellant's presence behind the steering wheel . . . support[ed] an inference that the accident had occurred a short time previously." *See Kuciemba v. State*, 310 S.W.3d 460, 463 (Tex. Crim. App. 2010). The *Kuciemba* court further determined that

> in order for the evidence to be sufficient to support a conviction for driving while intoxicated, there must be a temporal link between a defendant's intoxication and his driving. But a conviction can be supported solely by circumstantial evidence. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "the standard of review on appeal is the same for both direct and circumstantial evidence cases." Being intoxicated at the scene of a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident, and the inference of causation is even stronger when the accident is a one-car collision with an inanimate object.

*Id.* at 462 (citations omitted). The accident at issue here was a one-car collision, as in *Kuciemba*. Moreover, Pillars found no evidence that Dangerfield applied the brakes prior to the accident. A driver's failure to brake also provides some evidence that the accident was caused by intoxication. *Kirsch v. State*, 306 S.W.3d 738, 746, 746 n.26 (Tex. Crim. App. 2010) (citing *Sierra v. State*, 280 S.W.3d 250, 256 (Tex. Crim. App. 2009)).

Finally, Caleb Peek, an eyewitness to the accident, testified that he saw a motor vehicle go up the guardrail and hit the pillar. Pillars testified that he saw a puff of smoke come from underneath the Loop on the east side. When he arrived at the accident scene, Pillars found the vehicle high centered on the guardrail and observed Dangerfield in the driver's seat. As

19

summarized here, the circumstantial evidence is both legally and factually sufficient to support the determination that Dangerfield operated a motor vehicle in a public place. As discussed below, the evidence is likewise legally and factually sufficient to prove beyond a reasonable doubt that Dangerfield was intoxicated at the time of the accident.

Dangerfield claims he was not intoxicated at the time of the accident; rather, he maintains that he lacked the normal use of his mental and physical faculties for a different reason. In support of this contention, Dangerfield relies on *Vasquez v. State*, 166 Tex. Crim. 89, 311 S.W.2d 828 (1958). In that case, the investigating officer initially encountered the defendant lying unconscious in a hospital bed smelling of beer. *Id*. at 829. Because the only witness who expressed the opinion that the appellant was intoxicated based his opinion on facts which were as consistent with injury as with intoxication, the court determined that the evidence was insufficient to support conviction.

This case is easily distinguished from *Vasquez.* Here, Pillars arrested Dangerfield at the scene of the accident, at which time Dangerfield's breath carried a strong odor of alcohol, and an open can of cold beer was found in his car. Dangerfield was unsteady on his feet, was wearing only one shoe, and began urinating on the side of the road and then on himself. Dangerfield claimed to be uninjured, and Pillars did not observe any injuries to Dangerfield when Dangerfield exited the vehicle. Dangerfield refused to perform standardized field sobriety tests. Pillars testified that he believed Dangerfield to be intoxicated based on a very strong odor of alcohol

coming from his breath, bloodshot eyes, unsteady balance, incoherent statements, and lack of coordination. Murphy also testified that in his opinion, Dangerfield was very intoxicated. This opinion was based on the odor of alcohol on Dangerfield's breath, his actions and overall speech as well as his appearance and demeanor. The testimony of an officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication. *Hartman v. State*, 198 S.W.3d 829, 835 (Tex. App.—Corpus Christi 1996, pet. struck). In addition, the jury may consider the defendant's refusal to submit to a breath test, as in this case, as evidence of DWI. *See Bright v. State*, 865 S.W.2d 135, 137 (Tex. App.—Corpus Christi 1993, pet. ref'd); *see also* TEX. TRANSP. CODE ANN. § 724.061 (Vernon 1999) (evidence defendant refused breath test may be introduced into evidence at trial).

While there was testimony that Dangerfield had a stroke in 1998 that left him with a speech impediment of stuttering when he is angry, that he slurs his speech, that his eyes were bloodshot at trial and there was no odor of alcohol on his breath at that time, and that he was involved in a violent collision that could have caused a period of disorientation, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *Turro*, 867 S.W.2d at 47. The evidence supporting the conviction is not "too weak" to support the fact-finder's verdict. Further, when considering the conflicting evidence, the verdict is not against the great weight and preponderance of the evidence. Dangerfield's legal and factual insufficiency claims are overruled.

21

## III.    CONCLUSION

We affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:    July 19, 2010
Date Decided:    August 4, 2010

Do Not Publish

22