**Joe SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–00–00149–CR.

Court of Appeals of Texas,
Texarkana.

Submitted June 26, 2001.

Decided June 27, 2001.

Ronnie Jo Cohee, Beaumont, for appellant.

Rodney D. Conerly, Asst. Criminal District Attorney, Beaumont, Alfred E. Hernandez, Special Prison Prosecution Unit, Huntsville, for the State.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Joe Smith appeals his conviction by a jury for aggravated assault, enhanced by two prior felony convictions. Smith, an inmate in the Mark Stiles Unit in Jefferson County, was accused of assaulting Kevin Hogg, another inmate, with a sharpened piece of metal. The jury assessed his punishment at sixty years' imprisonment.

In his first issue on appeal, Smith challenges the legal sufficiency of the evidence. In reviewing the legal sufficiency of the evidence, we look to see whether after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Lane v. State,* 933 S.W.2d 504, 507 (Tex.Crim.App.1996). We must evaluate all the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Johnson v. State,* 871 S.W.2d 183, 186 (Tex. Crim.App.1993).

As alleged in the indictment, the elements of aggravated assault are that Smith (1) intentionally, knowingly, or recklessly, (2) caused bodily injury to Hogg, (3) with a deadly weapon, i.e., a piece of metal sharpened to a point. *See* Tex. Pen.Code Ann. § 22.02(a)(2) (Vernon 1994). The definition of a deadly weapon includes anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Tex. Pen.Code Ann. § 1.07(a)(17)(B) (Vernon 1994).

Hogg testified that Smith stabbed him numerous times with a metal instrument. His testimony was corroborated by Christopher Joseph, a corrections officer who was present during the assault. Darrell Randall, another inmate housed near Hogg and Smith, testified he saw Smith break a piece of metal off a door, heard him scraping something against the concrete in his cell, and saw him with the bloody weapon shortly after the assault. Keith Gorsuch, who was the supervisor of corrections officers on duty that day, testified that he saw Smith go into his cell immediately after the assault and that he heard the sound of Smith's toilet being flushed numerous times. Frank Barnett, another corrections officer, testified that the inmate who was moved into Smith's cell the day after the assault told him he found a "shank," or sharpened piece of metal lodged in the toilet of his cell. Gorsuch testified that he has seen instruments such as the one found in Smith's cell used to cause death or serious bodily injury.

From this evidence, a rational jury could conclude beyond a reasonable doubt that Smith assaulted Hogg with a deadly weapon. However, Smith contends the State failed to establish that it was he who committed the offense. The record shows that Smith voluntarily absented himself from the trial proceedings. He contends the State failed to show that he was the same Joe Smith who committed the offense.

There was evidence that an inmate Joe Smith committed the offense. Hogg testified that "[i]nmate Smith" assaulted him. Joseph testified that "[i]nmate Joe Smith" assaulted Hogg. It is true, however, that they never made an in-court identification of Smith as the perpetrator.

The key identification testimony was elicited from Gorsuch. He testified that when he arrived on the scene, he saw inmate Joe Smith returning to cell five, his assigned cell. Joseph testified that he saw inmate Joe Smith charging toward Hogg from cell five, his assigned cell. Hogg and Barnett also testified that inmate Joe Smith was assigned to cell five. Gorsuch testified that during a break in the trial, he went with the bailiff to a holding cell where he viewed Smith. He also identified "[i]nmate Joe Smith" from a picture, and testified that "[i]nmate Joe Smith" and the defendant, Joe Smith, are one and the same. From this evidence, the jury could rationally conclude that the defendant Smith was the person who committed the assault. We overrule Smith's first issue.

■ In his second issue on appeal, Smith contends the trial court erred in conducting voir dire and jury selection in his absence. The record shows that at the beginning of voir dire, Smith became upset with his attorney and requested that he be allowed to leave the courtroom. Smith then refused to comply with the trial court's instructions and became disruptive. The trial court had him removed.

A short time later, the trial court had the jury panel removed from the courtroom and had Smith brought back into the courtroom. Smith strenuously requested that new counsel be appointed for him, which the trial court refused. Smith then became extremely disruptive and uncooperative, and refused to give the trial court his assurance that he would not cause a disruption in front of the jury panel. The trial court had Smith removed from the courtroom and continued the trial.[1]

Smith cites TEX.CODE CRIM. PROC. ANN. art. 33.03 (Vernon 1989), which reads in part:

In all prosecutions for felonies, the defendant must be personally present at the trial ... provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.

One court, in dicta, commented that it is irrelevant whether the defendant's absence during voir dire and jury selection is voluntary. *Bledsoe v. State*, 936 S.W.2d 350,

351 n. 2 (Tex.App.—El Paso 1996, no pet.). Citing *Bledsoe*, the court of appeals in *Tracy v. State*, 14 S.W.3d 820, 826 (Tex. App.—Dallas 2000, pet. ref'd), concluded that the defendant's rights under Article 33.03 were violated when he voluntarily absented himself in the middle of voir dire to attend a doctor's appointment.

■ Assuming without deciding that the rule would apply when, as here, the defendant refuses to remain in the courtroom and indicates that he will disrupt the proceedings if forced to do so, we conclude that any error was harmless. A nonconstitutional error is harmless if it does not affect the defendant's substantial rights. TEX.R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Reversal is not required if after reviewing the record as a whole, we have a fair assurance that the error did not influence the jury's verdict or had only a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).

The *Tracy* court reasoned that the purpose of Article 33.03 is to allow the defendant to assist in the exercise of peremptory challenges. *Tracy*, 14 S.W.3d at 827. The court analyzed the error by reviewing whether the record showed the defendant was denied a fair and impartial jury. *Id.* (citing *Ladd v. State*, 3 S.W.3d 547, 562 (Tex.Crim.App.1999), *cert. denied*, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000)). This is the rule when assessing

---

1. In support of the trial court's actions, the State cites *Burrell v. State*, 653 S.W.2d 515, 516–17 (Tex.App.—Beaumont 1983, no pet.). In *Burrell*, the defendant had struggled with the bailiff at a previous setting of the case and had to be forcibly removed. *Id.* at 516. The trial court sent the defendant's attorney to determine whether the defendant would behave in a proper manner in the current proceeding, and the defendant's attorney indicated that Burrell would not. *Id.* However, it is unclear whether in *Burrell* the defendant was absent during voir dire and jury selection. Rather, the appellant contended that the trial court should have determined itself whether the defendant was voluntarily absenting himself from the proceedings, instead of having his attorney make that determination.

harm from the erroneous granting of the state's challenge for cause. *Ladd*, 3 S.W.3d at 562; *see also Jones v. State*, 982 S.W.2d 386, 394 (Tex.Crim.App.1998), *cert. denied*, 528 U.S. 985, 120 S.Ct. 444, 145 L.Ed.2d 362 (1999) ("the erroneous excusing of a veniremember will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury").

■ In contrast, when a trial court erroneously overrules a defendant's challenge for cause, harm is established by showing that: (1) the defendant exhausted his peremptory challenges; (2) the trial court denied his request for additional peremptory challenges; and (3) a juror on whom the defendant would have exercised a peremptory challenge was seated. *Johnson v. State*, 43 S.W.3d 1, 7 (Tex.Crim.App.2001). This rule also has the effect of protecting the defendant's right to a fair and impartial jury. Thus, *Tracy*'s analysis is appropriate because the harm from nonconstitutional errors affecting the composition of the jury is analyzed with respect to the fairness of the resulting jury to the defendant.

Smith contends the trial court misinformed the jury that he had chosen not to be present for trial. He also contends his presence at voir dire "would have gone far to remove the poison his conduct had injected into the jury...." Thus, he contends he was denied a fair and impartial jury.

We disagree that the trial court misinformed the jury regarding Smith's absence. Smith repeatedly asserted his desire not to be present in the courtroom and his intention to disrupt the proceedings if he was not removed. This conclusion is supported by Smith's assertion that he would be creating an issue for appeal by forcing the trial court to remove him. Thus, contrary to Smith's assertion, his *presence* during trial might have poisoned the jury against him, rather than remedying the effect of his conduct.

The record also does not reflect that Smith was denied a fair and impartial jury. Smith's attorney explored extensively the impact of Smith's behavior on the panel during voir dire. Each panelist responded that he or she would be able to presume Smith innocent and give fair consideration to all the issues in the trial, including the minimum punishment in the sentencing range, notwithstanding his conduct in court. Smith did not make any challenges for cause and did not request additional peremptory strikes. Finally, the jury was instructed not to refer or allude to Smith's absence in its deliberations or consider it for any purpose. We overrule Smith's second issue on appeal.

■ In his third issue on appeal, Smith contends the trial court erred in failing to conduct a hearing to determine whether there was evidence to support a finding that Smith was incompetent to stand trial. A person is incompetent to stand trial if he does not have (1) sufficient present ability to consult with his attorney with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against him. TEX.CODE CRIM. PROC. ANN. art. 46.02, § 1A(a) (Vernon Supp.2001). A defendant is presumed to be legally competent unless proved incompetent by a preponderance of the evidence. TEX.CODE CRIM. PROC. ANN. art. 46.02, § 1A(b) (Vernon Supp.2001).

■ During any part of the proceeding, evidence of a defendant's incompetence may be brought to the trial court's attention from any source. TEX.CODE CRIM. PROC. ANN. art. 46.02, § 2(b) (Vernon 1979). When evidence of incompetence during the proceeding is produced, the

court must conduct an inquiry, referred to as a "Section 2(b) inquiry," outside the presence of the jury to determine whether there is evidence to support a finding of incompetence to stand trial. *Id.* A Section 2(b) inquiry is required only if the evidence brought to the trial court's attention is such as to raise a "bona fide" doubt in the trial court's mind as to the defendant's competence. *Collier v. State,* 959 S.W.2d 621, 625 (Tex.Crim.App.1997). In general, a "bona fide" doubt is raised only if the evidence indicates recent severe mental illness, at least moderate mental retardation, or truly bizarre acts by the defendant. *Id.* Prior hospitalization and treatment for depression do not *per se* warrant the trial court to conduct a hearing on competence. *Moore v. State,* 999 S.W.2d 385, 395 (Tex.Crim.App.1999), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000).

In the present case, Smith does not allege that he suffered from recent severe mental illness or moderate mental retardation. The only acts that might be called "truly bizarre" were when Smith removed his shirt, undid his pants, laid down on the floor, and refused to move. Nevertheless, viewing the record as a whole, we conclude these acts do not constitute evidence raising a bona fide doubt concerning Smith's competence to stand trial, but rather show that Smith was attempting to protest the perceived unfairness of the trial court's actions.

The record shows that Smith had a rational and factual understanding of the proceedings against him. He asserted his desire to have a new attorney appointed for him several times. He also asserted that he did not want to represent himself. He informed the trial court that he intended to disrupt the proceedings unless he was allowed to leave the courtroom or was appointed new counsel. Finally, he in-

formed the trial court that by forcing it to remove him from the courtroom, he hoped to create an issue for himself on appeal.

The record shows that Smith had sufficient present ability to consult with his attorney with a reasonable degree of rational understanding. Smith informed the trial court that he observed counsel's performance at a pretrial hearing, which was held before voir dire, and decided that she was not representing him properly. He also voiced his refusal to cooperate with his attorney in his defense. Thus, the record shows that Smith deliberately refused to cooperate with his attorney, though he had the ability to do so. We overrule Smith's third issue on appeal.

 In his fourth issue on appeal, Smith contends he received ineffective assistance of counsel. The standard for testing claims of ineffective assistance of counsel is set out by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986). To prevail, Smith must prove by a preponderance of the evidence (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced his defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000).

 To meet this burden, Smith must prove that his attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for his attorney's deficiency, the result of the trial would have been different. *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. 2052; *Tong,* 25 S.W.3d at 712. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,*

466 U.S. at 694, 104 S.Ct. 2052; *Tong,* 25 S.W.3d at 712.

■■■ Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim. App.1999). Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Id.*

■■■ Our review of counsel's representation is highly deferential; we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Tong,* 25 S.W.3d at 712. We will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State,* 588 S.W.2d 588, 592 (Tex.Crim.App. 1979). The fact that another attorney, even Smith's attorney on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State,* 997 S.W.2d 695, 704 (Tex.App.—Texarkana 1999, no pet.).

Smith contends his attorney was deficient by helping the State convict him. The source of this contention is a statement Smith's counsel made to the trial court outside the jury's presence during a break in the proceedings:

THE COURT: Please be seated. Please bring the jury in.

[Prosecutor]: Your Honor, it's our understanding that Mr. Smith still does not want to come into the courtroom. We should make that note.

THE COURT: Has anyone spoken to him since the last break?

[Prosecutor]: Yes, Your Honor.

[Defense Counsel]: Your Honor, I spoke to Mr. Smith during the recess.

THE COURT: And what's his desire?

[Defense Counsel]: He still does not desire to come into the courtroom. *We've tried to handle, without his presence handle the identity issue for the state.*

THE COURT: I understand. But it's still his desire to not be in court?

[Defense Counsel]: Yes, sir.

THE COURT: Is it still his intention—if brought into court, is he going to be as disruptive as he has been?

[Defense Counsel]: We did not discuss that specifically.

THE COURT: Bring the jury in.

(Emphasis added.)

There is nothing in the record indicating what counsel meant by this statement or how she "handle[d] ... the identity issue for the state." The record shows that the bailiff escorted Gorsuch, who was the State's primary identifying witness, to Smith's holding cell so that Gorsuch could view him for the purpose of identification. Without a showing that his attorney initiated this procedure or pointed out its necessity to the State, Smith has not met his burden of firmly founding his allegation of ineffectiveness in the record. We overrule Smith's fourth issue on appeal.

The judgment is affirmed.