

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00144-CR
_____

ALDARIAN TYRONE DAVIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 35117-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

While the jury was deliberating the fate of Aldarian Tyrone Davis in one case, he agreed to plead guilty to several indictments. He now appeals his convictions resulting from those pleas of guilty for the offenses of aggravated assault with a deadly weapon, possession of a controlled substance with intent to deliver, and unlawful possession of a firearm by a felon. Davis presents two points of error: ineffective assistance of counsel and disproportionate sentencing. We overrule the points and affirm the judgment.

I.      **Factual and Procedural Background**

The State alleged Davis committed aggravated assault on or about August 16, 2006, while attempting to collect a debt incurred during a cocaine transaction. Davis was also indicted on allegations that, on February 5, 2007, he possessed a controlled substance with intent to deliver and possessed a firearm after being previously convicted of a felony.

The aggravated assault charge proceeded to trial. Davis originally entered a not guilty plea and the allegations were tried before a jury in the 188th Judicial District Court of Gregg County with Judge David Brabham presiding. At trial, Davis denied the assault and testified his differences with the victim originated from the sale of a DVD player. During deliberations, the jury sent several notes to the trial court. When the jury indicated that it was deadlocked six to six, the trial court delivered an *Allen*[1] charge to the jury. At the end of the day, the jury returned a note to the trial court

_____

[1]*Allen v. United States*, 164 U.S. 492 (1896).

2

indicating a "hung jury," with ten jurors voting "not guilty" and two jurors voting "guilty." The trial court informed the attorneys, with Davis present, that the jury had returned a note saying "hung jury" and that the note "does have a breakdown." The trial court stated, "Not to give an advantage to either side, I'm going to tell you the numerical breakdown but not what it is. The numerical breakdown is now ten to two."

Meanwhile, the State and Davis initiated discussions regarding a final resolution of all the charges pending against Davis. Without objection, the jury was allowed to recess for the day and was told to return at 9:30 the next morning. The State and Davis reached an agreement that Davis would enter an open plea before Judge Alvin Khoury in the 124th Judicial District Court of Gregg County and the State would recommend a sentence of five years for the aggravated assault charge, a sentence of twenty years for the possession of a controlled substance charge, and a sentence of ten years for the unlawful possession of a firearm by a felon charge.

The following morning, Davis pled guilty in the 124th Judicial District Court, and the State recommended sentences consistent with the above-mentioned agreement.[2] Judge Khoury sentenced Davis to ten years for the aggravated assault, twenty years for the possession of a controlled substance, and ten years for the unlawful possession of a firearm. Judge Khoury ordered the ten-year

---

[2]When asked, "What about the manner in which it would be served?" the State informed Judge Khoury that it would "defer to the Court." Defense counsel stated, in his talks with the State, that the State "did not oppose concurrent time as part of the recommendation" and asked Judge Khoury to "follow the State's recommendation and to do concurrent time."

sentence for unlawful possession of a firearm by a felon be served consecutively to the ten-year sentence for aggravated assault.

Three appeals are presently pending before this Court. Davis raises identical issues and makes identical arguments in all three of the appeals.[3] This appeal concerns Davis' conviction for aggravated assault with a deadly weapon. Davis argues that he received ineffective assistance of counsel and that his sentences constitute grossly disproportionate punishment in violation of the Eighth Amendment.

## II.     Ineffective Assistance of Counsel

Davis claims, in his first point of error, that he received ineffective assistance of counsel. The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. *Id.* at 689; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning

---

[3]*See Davis v. State*, cause numbers 06-07-00145-CR and 06-07-00146-CR.

4

of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686.

Davis complains that counsel was ineffective by failing to adequately inform Davis that the State's recommendations would not be binding on Judge Khoury and that Judge Khoury has a reputation for not following the State's recommendations. In addition, Davis claims trial counsel was ineffective for not inquiring into the actual numerical split of the jurors who believed Davis was not guilty.

**A.      Proceedings in Judge Khoury's Court**

Davis claims he would not have pled guilty if he had "been properly informed that Judge Khoury does not take plea agreements and that he has a history of not following the recommendations of the District Attorney's Office." The record demonstrates that Davis had been informed that Judge Khoury does not accept negotiated plea agreements and that his plea would be an open plea before the court. Before leaving Judge Brabham's court, Judge Brabham admonished Davis as follows:

> [Judge Brabham]:   And, Mr. Davis, you understand those are just recommendations before the 124th District Court?
>
> [Davis]:  Uh-huh.
>
> [Judge Brabham]:  You need to answer out loud.
>
> [Davis]:  Yes, sir.

[Judge Brabham]: I mean, there's no plea agreements or plea bargains in the 124th District Court. I just want to be sure you understand.

[Davis]: Yes, I understand.

In addition, the proceedings in the 124th Judicial District Court make it abundantly clear Davis was informed there was no plea agreement. Judge Khoury engaged Davis and the attorneys in the following colloquy:

[Judge Khoury]: . . . . Now, in any of these cases, is there any type of a plea bargain agreement?

[State]: No, your Honor.

[Defense Counsel]: No, your Honor.

[Judge Khoury]: In any of these cases, is there any type of agreement or understanding by and between counsel for the State, counsel for the accused and the accused himself that in any way can be considered as a plea bargain agreement?

[State]: No, your Honor.

[Defense Counsel]: No, your Honor.

[Judge Khoury]: Are these all open pleas of guilty to this Court?

[State]: They are, your Honor.

[Defense Counsel]: That's correct, your Honor.

[Judge Khoury]: Now, what that means, Mr. Davis, is this: The lawyers will make recommendations to me on what they think I should do. I'll listen to them, I'll listen to them equally. But you need to be aware of the fact that I don't always follow lawyers' recommendations. I sometimes do, I sometimes don't. And because there is no plea bargain in any of these cases, should I choose not to follow their

6

recommendations, you don't get to withdraw your guilty pleas; do you understand that?

[Davis]: Yes, sir.

[Judge Khoury]: Understanding there is no plea bargain agreement in any of these three cases, do you wish to continue with your guilty plea or not?

[Davis]: Yes.

[Judge Khoury]: Your guilty pleas.

[Davis]: Yes, sir.

As demonstrated by the above quotations, Davis was well informed that the recommendations would not be binding on Judge Khoury. Further, the record is silent concerning whether Judge Khoury has a reputation for not following the State's recommendations. The ineffectiveness of counsel is a matter that must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Smith v. State*, 51 S.W.3d 806, 813 (Tex. App.—Texarkana 2001, no pet.).

### B.      Numerical Split of Jury

Davis also argues his trial counsel was ineffective for failing to inquire into the actual numerical split of the jurors who believed Davis was not guilty. Judge Brabham informed Davis and trial counsel the note indicated that the jury was deadlocked and of the exact numerical split of the jurors' votes. Judge Brabham merely withheld whether more jurors believed Davis was not guilty. Davis has failed to present this Court with any authority that the trial court was required to show counsel the actual note or to inform him of the number of jurors voting to acquit. When, as in this

7

case, a trial court inadvertently learns of the numerical split in a deadlocked jury, we are not convinced the court is required to inform a defendant or the State of the numerical breakdown of jury deliberations. *See Ex parte Prewitt*, No. 04-95-00737-CR, 1996 Tex. App. LEXIS 780, at *6 (Tex. App.—San Antonio Feb. 28, 1996, pet. ref'd) (not designated for publication). Davis has not shown that his trial counsel was ineffective for not asking the trial court to reconsider its decision not to reveal the votes of the jurors.

We note the record is silent concerning counsel's motivations. Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689; *Tong*, 25 S.W.3d at 712. That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State*, 997 S.W.2d 695, 704 (Tex. App.—Texarkana 1999, no pet.). We will not conclude the challenged conduct constitutes deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia v. State*, 57 S.W.3d 436, 441 (Tex Crim. App. 2001); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). We are unable to conclude no competent attorney would have permitted his client to enter an open plea before Judge Khoury. Davis' first point of error is overruled.

### III.   Disproportionate Sentence

Davis filed a motion for new trial alleging that his sentence was disproportionate to the offense. This Court has held that a motion for new trial is an appropriate way to preserve this issue. *Mullins v. State*, 208 S.W.3d 469 (Tex. App.—Texarkana 2006, no pet.); *Delacruz v. State*, 167 S.W.3d 904 (Tex. App.—Texarkana 2005, no pet.). Davis contends the sentence imposed by the trial court was disproportionate to the offense, citing *Solem v. Helm*, 463 U.S. 277 (1983). Texas courts have traditionally held that, as long as the punishment assessed is within the range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or unusual. *See, e.g.*, *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). Here, Davis' sentences fall within the applicable ranges of punishment.

That does not end the inquiry. A prohibition against grossly disproportionate punishment survives under the Eighth Amendment to the United States Constitution apart from any consideration of whether the punishment assessed is within the range established by the Legislature. U.S. CONST. amend. VIII; *see Solem*, 463 U.S. at 290; *Harmelin v. Michigan*, 501 U.S. 957 (1991) (Scalia, J., plurality op.); *Jackson v. State*, 989 S.W.2d 842, 846 (Tex. App.—Texarkana 1999, no pet.); *Lackey v. State*, 881 S.W.2d 418, 420–21 (Tex. App.—Dallas 1994, pet. ref'd); *see also Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (describing this principle as involving a "very limited, 'exceedingly rare,' and somewhat amorphous" review).

Solem had suggested, as a three-part test, that an appellate court consider: (1) the gravity of the offense compared with the harshness of the penalty; (2) the sentences imposed for similar crimes in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *See Solem*, 463 U.S. at 292. *Harmelin* at least raised questions about the viability of the *Solem* three-part test. In fact, it was subsequently held that proportionality survived *Harmelin*, but that the *Solem* three-part test did not. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992); *Lackey*, 881 S.W.2d at 420–21. In light of *Harmelin*, the test has been reformulated as an initial threshold comparison of the gravity of the offense with the severity of the sentence, and then, only if that initial comparison created an inference that the sentence was grossly disproportionate to the offense should there be a consideration of the other two *Solem* factors—(1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions. *McGruder*, 954 F.2d at 316; *Mullins*, 208 S.W.3d at 470; *Lackey*, 881 S.W.2d at 420–21.

Davis argues the sentences, while within the statutory range of punishment, are grossly disproportionate to the offense. Davis was sentenced to ten years for aggravated assault. Aggravated assault is a second-degree felony with a punishment range of two to twenty years' imprisonment. *See* TEX. PENAL CODE ANN. § 12.33 (Vernon 2003), § 22.02(b) (Vernon Supp. 2007). In the course of committing this offense, Davis placed the victim at the risk of serious injury or death. Given the gravity of this offense, a ten-year sentence—in the middle of the statutory range of punishment—is not grossly disproportionate. The trial court sentenced Davis to twenty years for possession of a

controlled substance with intent to deliver. Under the facts stipulated by Davis, this offense was a first-degree felony with a range of punishment of five years to life. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Vernon 2003); TEX. PENAL CODE ANN. § 12.32 (Vernon 2003). This offense places the entire community in danger, and the sentence assessed is at the lower end of the statutory range.

Davis also challenges the sentence of ten years for unlawful possession of a firearm by a felon. As a third-degree felony, the trial court assessed the maximum sentence permissible. *See* TEX. PENAL CODE ANN. § 12.34 (Vernon 2003), § 46.04(e) (Vernon Supp. 2007). Davis' main complaint concerns the trial court's decision to order the ten-year sentence for possession of a firearm by a felon to be served consecutive to the ten-year sentence for aggravated assault. Davis does not argue that the trial court lacked authority to stack the sentence. *See* TEX. CODE CRIM. PROC. ANN. art. 42.08 (Vernon 2006). The cumulation of sentences does not constitute cruel and unusual punishment. *Stevens v. State*, 667 S.W.2d 534, 538 (Tex. Crim. App. 1984); *Baird v. State*, 455 S.W.2d 259 (Tex. Crim. App. 1970); *Quintana v. State*, 777 S.W.2d 474, 480 (Tex. App.—Corpus Christi 1989, pet. ref'd). Davis has not shown the trial court's decision to order the sentence to be served consecutively, or stacked, caused the sentence to be grossly disproportionate.

Further, evidence was presented that Davis had been previously convicted in 1998 of the offense of aggravated robbery and sentenced to ten years' confinement. The severity of the sentences imposed are not grossly disproportionate to the gravity of the offenses.

11

Finally, there is no evidence in the record comparing Davis' sentence with other sentences for similar crimes in Texas or comparing the sentences imposed on persons in Texas with sentences in other jurisdictions. *Mullins*, 208 S.W.3d 469; *see Fluellen v. State*, 71 S.W.3d 870, 873 (Tex. App.—Texarkana 2002, pet. ref'd); *Latham v. State*, 20 S.W.3d 63, 69 (Tex. App.—Texarkana 2000, pet. ref'd). Davis' second point of error is overruled.

For the reasons stated, we affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:     June 13, 2008
Date Decided:      June 18, 2008

Do Not Publish