In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00237-CR

                                                ______________________________

 

 

                                    THEODORE LEONARD,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 349th
Judicial District Court

                                                           Houston County, Texas

                                                         Trial Court
No. 07CR-189

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Theodore
Leonard was convicted, in a trial before the court, of assault on a public
servant.[1]  Leonard’s punishment range was enhanced by a
prior felony conviction, and the trial court sentenced him to eighteen years’ imprisonment.   

            He
alleges the trial court erred in three respects, all of which relate to his
competency to stand trial:  (1) violation
of his due process rights under the United States and Texas Constitutions by
failing to order Leonard be evaluated for competency to stand trial, (2)
failure to conduct an “adequate inquiry” into Leonard’s competency to stand
trial, and (3) denial of Leonard’s motion suggesting incompetency and
requesting an examination.  We overrule
the points of error and affirm the judgment and sentence.  

I.          Trial Court’s Duty to
Consider Competency

            The
prosecution and conviction of an accused while he or she is incompetent
violates due process.  Pate v. Robinson, 383 U.S. 375, 378
(1966).  The standard for determining
competency to stand trial under the Due Process Clause of the Fourteenth
Amendment is whether the defendant “has sufficient present ability to consult
with his lawyer with a reasonable degree of rational understanding and whether
he has a rational as well as factual understanding of the proceedings against
him.”  Dusky v. United States, 362 U.S. 402 (1960).  Texas employs this standard for the determination
of competency.  Tex. Code Crim. Proc. Ann. art. 46B.003 (Vernon 2006).  Under Texas law, the defendant is presumed to
be competent and bears the burden to prove his or her incompetence by a preponderance
of the evidence.  Tex. Code Crim. Proc. Ann. art. 46B.003; Smith v. State, 51 S.W.3d 806, 811 (Tex. App.––Texarkana 2001, no
pet.).  An inquiry into competency must
be conducted when there is evidence “sufficient to raise a bona fide doubt in the mind of the judge whether the defendant is
legally competent.”  Montoya v. State, 291 S.W.3d 420, 424 (Tex. Crim. App. 2009); see also Pate, 383 U.S. at 385.

            Either
party, or the trial court, sua sponte, may suggest the defendant is not
competent to stand trial.  Tex. Code Crim. Proc. Ann. art.
46B.004(a) (Vernon 2006).  If such a
suggestion is made, the trial court shall conduct an “informal inquiry
concerning whether there is some evidence from any source that would support a
finding that the defendant may be incompetent to stand trial.”  Tex.
Code Crim. Proc. Ann. art. 46B.004(c) (Vernon 2006).  After this informal inquiry, if the trial
court finds evidence to support a finding of incompetency, the trial court
shall order an examination of the defendant as to the defendant’s competency to
stand trial.  See Tex. Code Crim. Proc.
Ann. art. 46B.005(a) (Vernon 2006). 


            The
plain language of Article 46B.004(c) allows for a determination by an “informal
inquiry” of whether there exists evidence to support a finding the defendant
may be incompetent to stand trial.  Tex. Code Crim. Proc. Ann. art.
46B.004(c); Montoya, 291 S.W.3d 425.  The duty to conduct this informal inquiry,
though, only arises when the trial court is presented with some evidence
raising the issue of the defendant’s competency to stand trial:  

If a trial judge has a bona fide doubt about the competency of the defendant, he or
she shall conduct an informal inquiry to determine if there is evidence that
would support a finding of incompetence.  A bona
fide doubt may exist if the defendant exhibits truly bizarre behavior or
has a recent history of severe mental illness or at least moderate mental
retardation.  

 

Montoya, 291 S.W.3d at 425. 
Only if, after this “informal inquiry,” the trial court finds evidence
supporting a finding of incompetency, shall an expert be appointed to examine
the defendant to investigate the defendant’s competency to stand trial.  See
Tex. Code Crim. Proc. Ann. art.
46B.005(a).[2]  A trial court’s decision not to conduct a
competency hearing is reviewed for an abuse of discretion.  See
Moore v. State, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999).  A trial court abuses its discretion if its
decision is arbitrary or unreasonable.  Lewis v. State, 911 S.W.2d 1, 7 (Tex.
Crim. App. 1995).

II.        Evidence of Bona Fide
Doubt

            Leonard
relies on statements made by his trial counsel before the trial court as
evidence raising a bona fide doubt regarding Leonard’s competency to stand
trial.

            When
the trial court asked for announcements on readiness for trial, Leonard’s
defense counsel informed the trial court the defense was not ready and referred
the court to Leonard’s motion, filed that morning, which suggested Leonard was
incompetent and requested an examination. 
Counsel told the trial court the motion suggesting incompetency “kind of
calls into question” Leonard’s waiver of jury trial, executed about nine months
earlier.[3]  Defense counsel continues:

[M]y motion today kind of calls into question his
intelligent waiver of a jury trial, too, because of some of the same things I’m
still seeing today.  I guess I did not
recognize them back then, but in the last week, trying to prepare for this
[b]ench trial, I’ve been unable to communicate with him.  I don’t think he’s -- I think he understands
what the charges are, but I don’t think he understands the potential
consequences of the proceedings.  I don’t
think he has been able to disclose to me pertinent facts, events in his state
of mind.  And I’ve -- every time I talk
to him he wants to talk about other events that have occurred prior to
this.  He’s -- I’ve not been able to
actually -- in the last week been able to get a set fact pattern from him.  He hasn’t been able to discuss legal
strategies or options or anything like that. 
And -- 

 

            THE
COURT:  What do you mean he hasn’t been
able to discuss?

 

            [Defense
Counsel]:  He just doesn’t understand
anything.  He doesn’t understand.  When I bring up -- well, back when I first
talked about his incompetency, he doesn’t understand that if convicted of this,
because of his prior record, he doesn’t understand that he could be facing pen
time.  He doesn’t understand.  He doesn’t understand how they can bring
these charges against him.  And once
again, he has not been able to disclose to me any of the facts of this
situation because he wants to talk about facts from his divorce and things like
that that have no relevance to this case. 
Well, that have some relevance to this case, but not the facts to the
case at hand.  And it came to my attention,
Monday I discussed it with [the prosecutor], she indicated not that she thought
he was incompetent but she thought that he had some mental deficiency
possibly.  

            .
. . . [A]lso I’ve discussed it with his family, they agree with me that he does
not understand what’s going on.  He
apparently used to be on medication and he’s not on his medication
anymore.  It may just be a necessity of
getting him back on his medication so that he can understand what’s going on,
but he doesn’t.

 

We point out that later, when the
trial court asked Leonard, he said he had never been treated for mental
illness; he was on medication for “high blood pressure, glaucoma and diabetes.”  Leonard told the trial court he had “[q]uite
a few health problems,” but none of them involved mental illness.

            The
prosecutor clarified her comments to defense counsel about Leonard’s mental
status:

Judge, the comment I made with [defense counsel]
at my office was that [Leonard’s] crazy, and I followed it up with very quickly
with not legally insane or incompetent. 
My dealings with Mr. Leonard have been when he don’t -- and I think I
told [defense counsel] this -- when he doesn’t get the answer he wants, he
becomes belligerent, Judge, and acts like a nut.  I don’t think he’s incompetent.  I don’t think he’s legally insane.  I think this is the way he plays it every
time he is in a criminal situation.  I’ve
dealt with him on three or four occasions. 
It’s always the same.  

 

Defense counsel told the trial
court the suggestion of incompetency was not made by Leonard but by defense
counsel, and the trial court stated, “[W]e’ve had a hearing with Mr. Leonard
something like four times, at least four, . . . over two years.”   

            Defense
counsel told the trial court that Leonard was not cooperating with him in
preparation for trial and that Leonard could not give counsel “any pertinent
facts that I need to prepare.”  Counsel
said he and Leonard had “talked about the case before,” and Leonard was “different
before, completely different.”  No
explanation is made of this characterization.  


            The
trial court then questioned Leonard. 
Leonard told the court he was fifty-three years old and his education
went up to the eleventh grade (the record is not clear whether he completed
that level).  The trial court then
questioned Leonard about the proceedings at hand:

            THE
COURT:  Okay.  And do you understand what’s going on here
today?

 

            [Leonard]:  Some of it, Judge, I do and some of it I don’t.  Because I think -- I think to my best
ability, a lot of things that you don’t even know about that was kind of iffy.
Well, I’m not going to talk about it because it really don’t pertain to another
case.  It -- the part that really should
be here is -- 

 

            THE
COURT:  Okay.  Well, let’s don’t talk about the case.  But you understand what you’re charged
with?  

 

            [Leonard]:  Yes, sir, I do.  

 

            THE
COURT:  Tell me, wh[at] are you charged
with?

 

            [Leonard]:  Assault on a public servant.

 

            THE
COURT:  Okay.  What does that mean to you?

 

            [Leonard]:  Well, that means that I’ve got to hit him or
put my hands on him, which I didn’t do. 
He put his hands on me.  He
assaulted me.

 

            THE
COURT:  Okay.

 

            [Leonard]:  Because he knocked blood out of me.

 

            THE
COURT:  All right.  And have you and your attorney been able to
talk about that -- 

 

            [Leonard]:  Well, we -- 

 

            THE
COURT:  -- what happened?

 

            [Leonard]:  We talked about it, but I don’t see the issue
that he’s coming with.

 

            THE
COURT:  Okay.  Tell what you do not understand about that
part?

 

            [Leonard]:  Well, what I don’t understand, how can I be
charged with -- with hitting a public servant when my hands was behind my back.

 

            THE
COURT:  Okay.

 

            [Leonard]:  And I supposed to hit this guy hard enough to
daze him, I can’t understand that, Judge.

 

            THE
COURT:  Okay.

 

            [Leonard]:  I can’t understand it.

 

The court then asked the
prosecutor the range of punishment; she told the court the charged offense was
a third degree felony, but the State had alleged enhancements which could make
the minimum punishment twenty-five years.[4]  See
generally Tex. Penal Code Ann.
§§ 12.42(d), 22.01(b) (Vernon Supp. 2009). 
The trial court asked Leonard if he understood the possible punishment
if he were found guilty; although Leonard said it was “hard for me to see
myself guilty when I didn’t put my hands on” the victim, he acknowledged he
could be sent to prison if convicted. 
What the trial court clearly understood was Leonard’s position that he
did not believe he was guilty:

            THE
COURT:  Okay.  So as I understand it the biggest problem you
have is you don’t think you’re guilty of anything?

 

            [Leonard]:  I’m not guilty, Judge.

 

This concluded the questioning of
Leonard, and the defense attorney said, “That was far more lucid than he’s been
all[] week Judge.”  The trial court
described its perception of Leonard’s situation:

            THE
COURT:  I think he understands it, he’s
been down this path before.  He
understands what he’s charged with, he understands the repercussions if he’s
found guilty.  His complaint is he doesn’t
feel that he’s guilty.

 

            [Defense
Attorney]:  Judge -- 

 

            THE
COURT:  I don’t see that he’s taking any
medication or anything with regard to mental aspects.

 

            [Defense
Attorney]:  Judge, and as I stated
earlier, I do think he understands the charges and I -- I -- he was able to
understand more about the range of punishment with you than he was with me for
the last two or three days.  As far as
everything else, though, that’s -- I would still -- you heard him start going
into other facts and things that didn’t relate to this and that’s what I’ve
been dealing with all week and I never was able to get a straight answer on
what actually occurred that night and to get him prepared for trial.  I mean, I just, that’s why I raised the
issue.  And that’s -- I felt it was my
obligation to raise that issue because of the problems that I was having
communicating with him at that time.  

 

            THE
COURT:  Okay.  All right. 
Based on the conversation that we’ve had, I’m going to deny the motion
and move forward.

 

No further motions or arguments
were urged, and the court proceeded to hear evidence and try the case.  

III.       Informal Inquiry
Requirement 

            Here,
trial counsel presented to the trial court a suggestion Leonard was not
competent to stand trial.  After January
1, 2004, a trial court is required to determine by informal inquiry whether
there is some evidence from any source that would support a finding that the
defendant may be incompetent to stand trial. 
Tex. Code Crim. Proc. Ann.
art. 46B.004(c).  Prior to that time, the
statute required the trial court to conduct a formal competency hearing when
the evidence raised a bona fide doubt about the defendant’s competency to stand
trial.  Montoya, 291 S.W.3d at 424. 
There was some disagreement as to whether the standard for conducting
this informal hearing was changed by the new statute.  Id.  The Texas Court of Criminal Appeals has made
it clear that “[b]ona fide doubt is still the proper
standard for determining whether a trial court should conduct an inquiry.”  Id.
at 425; see McDaniel v. State, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003
(applying 46B.004’s predecessor, Tex.
Code Crim. Proc. Ann. art. 46.02, repealed
by Act of April 30, 2003, 78th Leg., R.S., ch. 35, §§ 15–17, 2003 Tex. Gen.
Laws 57, 72).  

            There
was nothing before the trial court showing “recent severe mental illness, at
least moderate retardation, or truly bizarre acts by the defendant.”  Alcott
v. State, 51 S.W.3d 596, 602 (Tex. Crim. App. 2001).  Nor can we say, looking at the record as a
whole, anything which could constitute a bona fide doubt as to Leonard’s
competency was presented to the trial court.[5]  Whether a bona fide doubt was raised is moot,
though, in light of the trial court’s questioning of Leonard, which is an “informal
inquiry” required by Article 46B.004(c).[6]  The trial court established that Leonard
understood the offense with which he was charged and that prison time could
result from a conviction.  Leonard had
never been treated for mental illness, and he was not on medication for any
mental affliction.  The “communication”
difficulty complained of by trial counsel seemed more in the nature of
disagreements as to the strength of Leonard’s defense; Leonard’s contention was
not that he was incompetent, but that he was not guilty.[7]  

            So,
even if there were some doubt raised by Leonard’s counsel, the trial court
complied with Article 46B.004(c)’s requirement by conducting an informal
inquiry of Leonard.  Neither the results
of the informal inquiry nor any other evidence supported a finding of
incompetency and, therefore, the trial court did not err in failing to order a
formal competency trial.  Tex. Code Crim. Proc. Ann. art. 46B.005
(Vernon 2006).  We find the statutory
requirements were fulfilled.   

            Likewise,
no due process violation occurred, as the statute is written in such a way as
to incorporate the due process protections necessary.  See
McDaniel, 98 S.W.3d at 709 (due
process protections prohibiting conviction of an incompetent person are “built
into” former Article 46.02).  Finally,
for the reasons stated above, we find no abuse of discretion in the trial court’s
denying Leonard’s motion suggesting incompetency and requesting a mental
evaluation.

            We overrule Leonard’s three points
of error and affirm the trial court’s judgment and sentence. 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          September 7, 2010

Date Decided:             September 9, 2010

 

Do Not Publish           











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann. § 73.001
(Vernon 2005).  We are unaware of any
conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex. R. App. P. 41.3.





[2]Leonard’s
second point of error complains the trial court did not perform an “adequate
inquiry” into Leonard’s competency. 
Leonard does not explain what he believes an adequate inquiry would
be.  We treat his complaint as
complaining that a 46B.004(c) “informal inquiry” was not performed.  





[3]We
point out the motion suggesting incompetency makes no reference to Leonard’s
waiver of jury trial; the motion simply asks for an expert to be appointed to
evaluate Leonard’s competency; and in the event the trial court finds evidence
of incompetency, an “incompetency trial” be convened.  





[4]A
negotiated plea agreement was eventually reached on punishment, resulting in
Leonard’s sentence of eighteen years’ imprisonment.  





[5]“While
the standard of bona fide doubt is easily stated, it is not so easily
applied.  Each instance must be examined
on a case by case basis to determine if a bona fide doubt is raised.  Generally, to raise the issue, there must be
evidence of recent severe mental illness or bizarre acts by the defendant or of
moderate retardation.  The evidence must
cause the court a bona fide doubt that the defendant has a sufficient present
ability to consult with his lawyer with a reasonable degree of rational
understanding or that he lacks an understanding of the proceedings against
him.”  Mata v. State, 632 S.W.2d 355, 359 (Tex. Crim. App. [Panel Op.] 1982)
(citation omitted).

 





[6]Cf. Lawrence
v. State, 169 S.W.3d 319, 323–25 (Tex. App.––Fort Worth 2005, pet.
ref’d).  There, the trial court engaged
in an examination with Lawrence over whether he understood the charges; if he
had been able to confer with his attorney; and his attorney’s opinion on
Lawrence’s competency; the appellate court referred to this as an “informal
inquiry” required by Article 46B.004(c). 
Nonetheless, there was still no evidence which could be said to compel
the trial court to order a competency evaluation of Leonard.  





[7]Compare
this “inquiry” by the trial court with that done in Montoya.  Montoya pled guilty
without any agreement or bargain as to punishment; the trial court questioned
her and established she understood the range of punishment and rights she gave
up by pleading guilty without a negotiated plea agreement.  She testified she suffered from depression,
abused drugs and alcohol, and was on medication for her liver problems.  Part of her depression stemmed from her
diagnosis of only about six months left to live, but she conceded she could
live longer if she abstained from drugs and alcohol.  Montoya,
291 S.W.3d at 421–22.  Montoya’s sister
testified the defendant was very ill and needed constant care; she was “like a
little kid” who had to be dressed and administered medicine.  Id.
at 422.  The Texas Court of Criminal
Appeals found this was not evidence of “recent severe mental illness, moderate
retardation, or truly bizarre acts, and there was no suggestion by Appellant’s
attorney, the State, or the trial court, all of whom observed Appellant’s
behavior at the hearing, that Appellant appeared unable to understand the
proceedings.”  Id. at 426.  The appellate
court erred in holding the trial court should have proceeded to Article 46B.004(c)’s
informal inquiry.