

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00164-CR

_____


JACKIE LAWRENCE SCOTT, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 25,735



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Having been convicted of aggravated robbery with a deadly weapon and assessed a penalty of eleven years' imprisonment by a jury, Jackie Lawrence Scott has prosecuted this appeal with a singular complaint: Scott alleges that he received ineffective assistance of counsel at trial because counsel failed to request a jury instruction regarding the need of independent evidence to corroborate the testimony of accomplice witnesses.

We affirm the judgment of the trial court because the record does not demonstrate ineffectiveness by Scott's trial counsel.

**Fact Summary**

Sometime between 4:00 a.m. and 5:00 a.m. December 19, 2008, Mike Bell, Jr., Bryan Morrison, David Taylor, and Scott were the only patrons in the Pot of Gold Game Room in Greenville, Texas. Bell and Scott asked William Robert Streng, the on-duty manager of the game room, to unlock the door[1] so they could leave to pick up their friend, Billy Massey, who had just called. After Streng complied, Bell and Scott left and then returned, but Massey was not with them (something of which Streng took no particular notice at the time). Shortly thereafter, Bell once more asked Streng to unlock the door, this time under the pretense that Bell wanted to return to his truck so he could retrieve money from it. When Streng unlocked and opened the door, a man wielding a pistol, wearing a ski mask, and clad in a hoodie sweatshirt entered the game room and ordered Streng to lie on the floor. Streng complied, but surreptitiously removed $230.00

---

[1]The front door of the establishment was always locked after midnight, and only Streng had the keys.

from his pocket and tossed it between two of the gaming machines. Streng testified that the armed man tossed some duct tape to Scott, who used the tape to bind Streng "from the head all the way down" to his feet and blindfolded him. Streng was then carried to the restroom, where he extricated himself from the duct tape after being left alone. Hearing Streng banging on the drywall ceiling in an effort to escape, Massey and Scott re-entered the restroom and taped him up once more. After listening to quite a bit of noise (including a single shot which Streng feared was directed toward him), Streng noticed that absolute quiet had finally returned to the game room. He then managed once again to remove the duct tape, returned to the main part of the building, observed that all of the video machines had been broken into and noticed that all of the telephones had been removed, and ran to the highway to seek aid. Streng said he flagged down a passerby, who took him down to the street, where he used the telephone to alert the authorities.

The padlocks on the game room's slot machines had been cut off with bolt cutters and the cash and circuit boards in them had been removed, along with the telephones, the video surveillance cameras, and recording equipment on the premises.

A Wal-Mart employee testified that at about 4:30 a.m. December 19, 2008, a group of three males (later identified from the Wal-Mart security video recording as Scott, Bell, and Massey) had entered the Wal-Mart store in Greenville and had purchased a set of bolt cutters, a ski mask, a hoodie, gloves, duct tape, a screwdriver, and a crowbar. The Wal-Mart store, being only three to four miles distant from the crime scene, was a mere five-minute drive from the game room.

3

Two days after the robbery, Scott called Steven Thornton, and asked if he was interested in buying game room circuit boards on consignment. A few days after the robbery, Massey was arrested at a friend's house; at the time of his arrest, he was found to have bolt cutters in his possession.

At the time of Scott's trial, Bell and Massey had already pled guilty to aggravated robbery with a deadly weapon as a result of the incident; both were called as witnesses by the State. Bell testified that Massey was the ring leader of the robbery, ordering the others around, and that he thought at the time of the robbery Massey might have shot Streng. Bell identified Scott as being with him as portrayed in the Wal-Mart security photographs from the night of the robbery, but he denied that Scott was involved in the robbery. However, Bell had previously given a statement that Scott had freely and voluntarily participated in the robbery and that statement was introduced.

Like Bell, Massey identified Scott in the Wal-Mart security photographs; however Massey testified that "all of us" (meaning Streng as well as Scott and Bell) were involved in planning the robbery. Massey testified that Taylor ended up helping in the robbery and that Streng acted as an accomplice as the game room would make an insurance claim for the cash taken. He claimed that Scott was involved in taping up Streng and that once Streng was put in the restroom, Massey, Scott and the others "bust[ed] open the machines." After the robbery, Massey, Scott, and Bell left together in the same vehicle. Massey confirmed that they took cash and computer boards during the robbery.

4

**The Record Does Not Demonstrate Ineffectiveness by Scott's Trial Counsel**

In Scott's sole point of error, he argues that his trial counsel was ineffective because he failed to request an accomplice-witness jury instruction that would have instructed the jury that independent corroborating evidence linking Scott to the crime was necessary in order to convict. TEX. CODE CRIM. PROC. ANN. art 38.14 (Vernon 2005); *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). By their own testimony, Massey and Bell admit to being accomplices with Scott; Massey also claims that Streng participated in the entire episode as an accomplice in an effort to perpetrate insurance fraud.

Ineffective assistance of counsel claims are evaluated under the two-part test formulated by the United States Supreme Court in *Strickland v. Washington*, requiring a showing of both deficient performance and prejudice. 466 U.S. 668, 689 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Fox v. State*, 175 S.W.3d 475, 485 (Tex. App.—Texarkana 2005, pet. ref'd). First, Scott must show that his counsel's representation fell below an objective standard of reasonableness.[2] *Fox*, 175 S.W.3d at 485 (citing *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)). We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance, and was motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The second *Strickland* prong requires a showing that the deficient performance prejudiced the defense to the degree that there is

---

[2]The presumptions and standards of proof of *Strickland* apply to the punishment phase as well as to the trial state of criminal proceedings. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).

a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 694; *Tong*, 25 S.W.3d at 712. Failure to satisfy either part of the *Strickland* test is fatal. *Strickland*, 466 U.S. at 697; *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).

A *Strickland* claim must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim.[3] *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 813. Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686.

Here, the record is effectively silent[4] as to the reasoning employed by Scott's trial counsel in his not having requested accomplice-witness jury instructions regarding the testimony of Bell, Massey, and Streng. Where an appellate record is silent as to why trial counsel failed to take certain actions, Scott has failed to rebut the presumption that trial counsel's decision was in some way reasonable. *See Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007). In this case,

---

[3]Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Fuller v. State*, 224 S.W.3d 823, 828–29 (Tex. App.—Texarkana 2007, no pet.). In addressing this reality, the Texas Court of Criminal Appeals has explained that appellate courts can rarely decide the issue of ineffective assistance of counsel because the record almost never speaks to the strategic reasons that trial counsel may have considered. The proper procedure for raising this claim is, therefore, almost always by application for writ of habeas corpus. *Freeman v. State*, 125 S.W.3d 505, 511 (Tex. Crim. App. 2003); *Aldrich v. State*, 104 S.W.3d 890, 896 (Tex. Crim. App. 2003).

[4]The record before us does not reflect that there was any new trial or post-trial hearing or other evidence.

6

there is no record at any level to indicate that there was no strategic reason that counsel declined to request the special instruction.

One should note that there was some corroborating testimony implicating Scott in that Thornton (who was not alleged to have been an accomplice) had testified that Scott had attempted to peddle game room circuit boards—rather unusual items and which were likely fruits of the robbery. Further, the Wal-Mart security video recording showing Scott in the act of participating with two of the admitted perpetrators of the crime in the purchase of the identical kinds of things used in carrying out the robbery (i.e., tools in the robbery) at about the same time the robbery occurred would point to corroboration. Perhaps Scott's counsel considered this as corroboration, which would have rendered such an instruction of no practical value to the defense.

The ineffectiveness of counsel is a matter that must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Smith v. State*, 51 S.W.3d 806, 812 (Tex. App.—Texarkana 2001, no pet.). In the absence of such a record, and lacking anything that would indicate such ineffective assistance as could be shown without such a record, we overrule the point of error.

We affirm the trial court's judgment.

                                        Bailey C. Moseley
                                        Justice

Date Submitted:       May 17, 2011
Date Decided:         June 1, 2011

Do Not Publish