BAILEY C. MOSELEY, Justice,
dissenting.
Although I completely concur with the majority that reversible error occurred because there is no evidence that John Anthony Adams elected to represent himself in his trial, I reluctantly disagree that the State took the requisite steps to provide the evidence of Adams’ identity, a necessary element of its case.
The majority opinion correctly describes the standard for the measure of legal sufficiency and restating it would be redundant.
In taking the position that Adams has been sufficiently identified at trial, the majority relies heavily on the events that occurred before and during voir dire of the jury panel.
Assuredly, Adams was present in the courtroom before commencement of voir dire and both the trial court and the prosecutor made reference to him before the jury panel as “Mr. Adams.” By his contumaciously contemptible behavior, Adams must have drawn a great deal of attention to himself at that time. Due to his outbursts, Adams was removed from the courtroom and then returned for a short while in the presence of the panel before he caused himself to be ejected from the courtroom once again. Even though he practiced conduct which would have had the impact of indelibly stamping himself on the minds of almost anyone who would have been in attendance, this unforgivable conduct occurred before the jury was actually empaneled and before any evidence could have been provided to the jury. Pointing out that the jury was drawn from the panel who witnessed all of these things, the State says that “[cjircumstan-tially, the jurors could gather from the start of voir dire and the testimony from the witness stand discussing John Adams, that the man who responded to Mr. Adams without any contention as to his identity, was the same defendant listed in the indictment and jury charge.” Contrarily, we must take into account that “voir dire examination and opening and closing statements are not evidence.” Fuller v. State, 73 S.W.3d 250, 264 (Tex.Crim.App.2002).
The majority opinion relies chiefly on the fact that the trial judge made reference at that time to the accused as “Mr. Adams” and announced that the case was styled, The State versus John Anthony Adams, together with the fact that the State’s attorney treated him as the person on trial. Should we ignore the fact that these statements were made before commencement of the trial, we are still faced with the fact that such statements by the trial court and the State would need to be included in the evidence upon which the *814 jury relied. Surely though, no one should be able to attribute statements made by the trial judge or the State’s attorney as evidence of the identity of the defendant (whether during voir dire or after commencement of the trial) because that would put the trial court and the State’s attorney in the posture of (unsworn) fact witnesses.
After the trial actually commenced, the State presented three fact witnesses: (1) Tara Hamblen, the mother of the victim; (2) Martha Dykes, who interviewed the child victim; and (3) Chris Clark, an investigator with the Office of the Upshur County Sheriff.
Hamblen (th® niece of Adams’ wife) testified that Adams tended the child while Hamblen worked. She related that the child had told her that Adams (to whom the child made reference as “Uncle John”) had touched her inappropriately. Adams was not in the courtroom during this testimony and Hamblen did not identify him to the jury. No attempt was made to tie “Uncle John” to the man who had previously been in the courtroom.
Dykes, a trained child forensic interviewer, testified about having talked with the child and a video recording of that interview was admitted into evidence. Even so, no attempt was made to have Dykes identify Adams as the perpetrator to whom the child made reference.
Clark testified that he had contacted Adams about the allegations made against him regarding the child but that Adams refused to cooperate with him. Clark provided no testimony that would aid to identify Adams, the person on trial, as being the accused.
This case can be contrasted with this Court’s case of Smith v. State, 51 S.W.3d 806 (Tex.App.-Texarkana 2001, no pet.). In Smith, the defendant became upset with his counsel at the beginning of voir dire. He became disruptive, asked to leave the courtroom, refused to follow the trial court’s instructions, and was finally removed from the courtroom. Id. at 810. Being returned to the courtroom a short time later, Smith “strenuously requested” a new appointed counsel, became very disruptive, and refused to assure the trial court he would behave appropriately if allowed to remain in the courtroom, whereupon he was once again removed. Id. The similarities to the Smith case now cease. In Smith, a witness who had witnessed some of the events leading to the charges against Smith, went to the cell where Smith was then being held during a trial break, and identified Smith as the perpetrator. The witness also identified a photograph of Smith. We have none of that here.
As mentioned before, my position on this matter is taken very reluctantly because I realize that this failure to identify Adams can only be counted as a failure of the State to prove a necessary element of its case with the ineluctable conclusion that there was a legal insufficiency of the evidence to sustain the conviction. The reluctance on my part springs from the fact that it appears that the general chaos that brought about the errors in this case were precipitated by the inexcusable conduct of Adams himself. Therefore, it would seem that the position I take would reward Adams for his own bad behavior by directing an acquittal.
Even so, I would hold that the State failed to prove its case and order Adams’ acquittal.